# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| RUSSELL BARTLETT,<br><br>Plaintiff,<br><br>vs.<br><br>BLASER, SORENSEN & OLESON, Chartered, an Idaho corporation, STEPHEN J. BLASER, an individual,<br><br>Defendants. | Case No.: 4:13-cv-00017-REB<br><br>**MEMORANDUM DECISION AND ORDER RE:**<br><br>**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Docket No. 19)**<br><br>**PLAINTIFF'S MOTION TO COMPEL (Docket No. 21)**<br><br>**DEFENDANTS' AMENDED MOTION FOR SUMMARY JUDGMENT (Docket No. 26)**<br><br>**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Docket No. 38)**<br><br>**PLAINTIFF'S MOTION TO AMEND TO SEEK PUNITIVE DAMAGES (Docket No. 39)**<br><br>**PLAINTIFF'S AMENDED MOTION FOR SUMMARY JUDGMENT (Docket No. 49)** |

Now pending before the Court are the following motions: (1) Defendants' Motion for

Summary Judgment (Docket No. 19), (2) Plaintiff's Motion to Compel (Docket No. 21), (3)

Defendants' Amended Motion for Summary Judgment (Docket No. 26), (4) Plaintiff's Motion

for Summary Judgment (Docket No. 38), (5) Plaintiff's Motion to Amend to Seek Punitive

**MEMORANDUM DECISION AND ORDER - 1**

Damages (Docket No. 39), and (6) Plaintiff's Amended Motion for Summary Judgment (Docket No. 49). Having carefully considered the record, participated in oral argument,[1] and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

1.      In late May/early June 2011, Plaintiff performed plumbing work for Rebecca and Robert Trigg (the "Triggs") at the Triggs' residence in Pocatello, Idaho. *See* Defs.' SOF Nos. 5-7 (Docket No. 20, Att. 1) (citing Ex. A to Blaser Decl. ¶ 6 (Docket No. 20, Att. 2)).

2.      On August 30, 2011, the Triggs' insurer, Property & Casualty Insurance Company of Hartford ("Hartford"), sent a letter to Plaintiff indicating that the Triggs were making a claim for water damage, stating that the damages resulted from Plaintiff's negligence and requesting that Plaintiff pay the claim amount of $10,344.69. *See id*. at No. 8 (citing Ex. B to Blaser Decl. ¶ 7 (Docket No. 20, Att. 2) ("This company carries insurance for the above-named insured. Under the coverage provisions of our policy we were obligated to pay damages in the above amount. Our investigation indicates that the damages resulted from your negligence.")).

---

[1] On January 7, 2014, the Court held a telephonic hearing on Plaintiff's Motion to Compel (Docket No. 21) and Defendants' Amended Motion for Summary Judgment (Docket No. 26) (at least insofar as adding the argument referenced therein). *See* 1/7/14 Minute Entry (Docket No. 36). On January 30, 2014, the Court then held an in-person hearing on Defendants' Motion for Summary Judgment (Docket No. 19) and Defendants' Amended Motion for Summary Judgment (Docket No. 26). Before the January 30, 2014 hearing, on January 10, 2014, Plaintiff filed his own Motion for Summary Judgment (Docket No. 38) along with a Motion to Amend to Seek Punitive Damages (Docket No. 39) – these motions were not heard at the January 30, 2014 hearing. Oral argument also did not take place for Plaintiff's subsequently-filed Amended Motion for Summary Judgment (Docket No. 49). Still, given the interrelated issues presented within these motions, coupled with the oral argument that has taken place with respect to certain of these motions, this Memorandum Decision and Order attempts to once-and-for-all "settle the water" on all outstanding motions.

3.	On September 27, 2011, Plaintiff's insurer, American National Property and Casualty ("ANPAC"), sent a letter to Hartford denying Hartford's claim and concluding that the damages were not the result of Plaintiff's negligence.  *See id.* at No. 10 (citing Ex. C to Blaser Decl. ¶ 8 (Docket No. 20, Att. 2) ("Our insured advises when he responded to the call to repair the leak at your insured's home, he found water damage which appeared to have been there for one to two months.  Our insured responded to the work order . . . and did the repairs as needed. This water damage was not a result of our insured's negligence.")).

4.	On September 30, 2011, Hartford sent Plaintiff another letter demanding that Plaintiff satisfy the loss resulting from his alleged negligence.  *See id.* at No. 11 (citing Ex. D to Blaser Decl. ¶ 9 (Docket No. 20, Att. 2) ("We have not received a response from you to our previous requests for reimbursement.  This is your final opportunity to resolve this matter amicably.  The Hartford has now prepared this matter to be sent to our legal counsel to pursue collection on the above referenced loss.")).

5.	On October 25, 2011, ANPAC sent another letter to Hartford, again denying the claim on the basis that Plaintiff was not negligent.  *See id.* at No. 12 (citing Ex. E to Blaser Decl. ¶ 10 (Docket No. 20, Att. 2) ("Our insured advises when he responded to the call to repair the leak at your insured's home, he found water damage which appeared to have been there for one to two months.  Our insured responded to the work order . . . and did the repairs as needed.  This water damage was not a result of our insured's negligence.")).

6.	On August 14, 2012, Defendant Blaser, on Hartford's behalf, wrote to Plaintiff, indicating his representation of Hartford and seeking collection for a water damage loss claim that occurred on May 21, 2011.  *See id.* at No. 13 (citing Ex. F to Blaser Decl. ¶ 11 (Docket No.

**MEMORANDUM DECISION AND ORDER - 3**

20, Att. 2)).  That letter asserted the claim was delinquent and in arrears totaling $10,344.69.  *See id*.  Additionally, it said: "YOU ARE HEREBY NOTIFIED THAT WE ARE ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE." *Id*. (emphasis in original).  Apparently, Plaintiff never received the letter.  *See id*. at Nos. 14-15 (citing Exs. G & H to Blaser Decl. ¶ 12 (Docket No. 20, Att. 2)).

7.      On September 25, 2012, Defendants, on Hartford's behalf, filed a complaint against Plaintiff in the Seventh Judicial District of the State of Idaho, Bingham County (the "state court action").  *See id*. at No. 16 (citing Ex. I to Blaser Decl. ¶ 13 (Docket No. 20, Att. 2)).  In pertinent part, the state court action alleges:

> That Defendant [(in the state court action, but Plaintiff in this action)] owes Plaintiff [(in the state court action, but Defendants here)] the sum of $10,344.69, together with interest at the rate of 12% and carrying charges as allowed by law from July 5th, 2012, for goods and/or monies loaned to Defendant [(in the state court action, but Plaintiff in this action)] by Plaintiff [(in the state court action, but Defendants here)] . . . .

*See id*.  According to Defendants themselves, the state court action "appears like a debt collection, but is intended to be a subrogation claim for Hartford's payment of damages incurred by its insureds, the Triggs, as a result of Bartlett's alleged negligence." *Id*

8.      On October 7, 2012, Plaintiff (in this action, but the defendant in the state court action) was served with the state court action's complaint.  *See id*. at No. 17 (citing Blaser Decl. ¶ 14 (Docket No. 20, Att. 2)).  On October 22, 2012, Plaintiff's counsel made an appearance in the state court action and filed a motion for change of venue.  *See id*. at No. 18 (citing Ex. J to Blaser Decl. ¶ 15 (Docket No. 20, Att. 2)).[2]

---

[2]  At that time, Plaintiff's counsel was Bryan Smith of Smith, Driscoll & Associates, PLLC – the firm which also initially represented Plaintiff in *this* action.  *See* Defs.' SOF No. 18 (Docket No. 20, Att. 1).  On November 1, 2012, Powers Tolman, PLLC entered an appearance for Plaintiff and filed a substitution of counsel to replace Smith, Driscoll & Associates, PLLC.  *See id*. at No. 19 (citing Ex. K to Blaser Decl. ¶ 16 (Docket No. 20, Att. 2).

**MEMORANDUM DECISION AND ORDER - 4**

9.      On November 2, 2012, Hartford and Plaintiff (in this action, but the defendant in the state court action) executed and filed a stipulation for change of venue in the state court action.  *See id*. at No. 20 (citing Ex. L to Blaser Decl. ¶ 17 (Docket No. 20, Att. 2)).

10.      On November 6, 2012, an order was entered in the state court action transferring venue from Bingham County, Idaho to Jefferson County, Idaho.  *See id*. at No. 21 (citing Ex. M to Blaser Decl. ¶ 18 (Docket No. 20, Att. 2)).

11.      On December 21, 2012 attorney Smith (the defendant's original attorney in the state court action, and, now, Plaintiff's attorney in this action) sent a letter to Defendant Blaser demanding payment of $641.40 in fees and costs incurred in the preparing and filing the motion for change of venue.  *See id*. at No. 25 (citing Ex. Q to Blaser Decl. ¶ 22 (Docket No. 20, Att. 2)).  In his letter, attorney Smith characterized Hartford's complaint in the state court action as an effort "to collect a consumer debt" and that "[y]our filing a lawsuit against [Plaintiff] in a county where he does not reside is contrary to law."  *Id*.

12.      On January 7, 2013, Plaintiff (in this action, but the defendant in the state court action) answered Hartford's complaint in the state court action, asserting certain tort defenses, including superseding and/or intervening causes (first affirmative defense), comparative negligence (second affirmative defense), failure to mitigate (third affirmative defense), no proximate cause (fourth and seventh affirmative defenses), and tort damages/liability limitations (fifth affirmative defense).  *See id*. at No. 22 (citing Ex. N to Blaser Decl., ¶ 19 (Docket No. 20, Att. 2)).

13.      On January 9, 2013, Plaintiff filed his Complaint in *this* action, asserting three substantive claims against Defendants: (1) Violation of Federal Fair Debt Collection Practices

Act – Improper Venue (Count I); (2) Violation of Federal Fair Debt Collection Practices Act – Failure to Provide Proper Notice (Count II); and (3) Abuse of Process (Count III). *See* Compl., pp. 2-4 (Docket No. 1). In particular, Plaintiff contends that Defendants violated the Fair Debt Collection Practices Act ("FDCPA") by improperly filing the state court action in Bingham County, Idaho against Plaintiff, a Jefferson County, Idaho resident, to collect a consumer debt. *See id.* at pp. 2-3. As to the alleged consumer debt, Plaintiff claims that Defendants (as debt collectors under the FDCPA) failed to send Plaintiff written notice at least 30 days before filing the state court action. *See id.* at p. 3. Plaintiff asserts that Defendants' conduct in these respects amounts to an abuse of process. *See id.* at pp. 3-4.

14. On February 7, 2013, attorney Justin Oleson, an attorney with Defendant Blaser, Sorensen & Oleson, replied to attorney Smith's December 21, 2012 letter, enclosed a check in the amount of $641.40, and requested that this action be dismissed. *See* Defs.' SOF No. 27 (Docket No. 20, Att. 1) (citing Ex. R to Blaser Decl., ¶ 24 (Docket No. 20, Att. 2)).

15. On March 7, 2013, attorney Smith responded to attorney Oleson's February 7, 2013 letter, stating: "Please find enclosed the check you sent our office in the amount of $641.40. Our client has rejected your offer. This means that you will need to file an appearance so that we can move the case forward." *Id.* at No. 28 (citing Ex. S to Blaser Decl., ¶ 25 (Docket No. 20, Att. 2)).

16. On April 18, 2013, Hartford filed an amended complaint in the state court action. *See* Defs.' SOF No. 23 (citing Ex. O to Blaser Decl., ¶ 20 (Docket No. 20, Att. 2)). Hartford's amended complaint states in relevant part:

- "Plaintiff's claim is in the nature of subrogation, based upon the tortious conduct of the Defendant [in the state court action, but Plaintiff in *this* action] set forth herein."

**MEMORANDUM DECISION AND ORDER - 6**

- "Plaintiff's claim is not based upon any debt arising out of any transaction between the parties, which was primarily for personal, family, or household purposes."

- "Pursuant to its insurance policy, Plaintiff paid for the damage to Robert and Rebecca Trigg's home in the amount of $10,344.69 and is subrogated to its home in an amount not less than $10,344.69 and is subrogated to its insured's rights against the Defendant [in the state court action, but Plaintiff in *this* action] of its payment."

- "Plaintiff's claim is a subrogation and not a debt arising out of any transaction with the Defendant [in the state court action, but Plaintiff in *this* action] which was primarily for personal or household payment."

Ex. O to Blaser Decl., ¶ 20 (Docket No. 20, Att. 2). Notably, the caption of the amended complaint identifies Hartford "as subrogee" of the Triggs. *See id*.

17.     On April 29, 2013, Plaintiff (in this action, but the defendant in the state court action) answered Hartford's amended state court complaint, asserting the identical tort defenses as those raised in its answer to Hartford's original complaint, including superseding and/or intervening causes (first affirmative defense), comparative negligence (second affirmative defense), failure to mitigate (third affirmative defense), no proximate cause (fourth and seventh affirmative defenses), and tort damages/liability limitations (fifth affirmative defense). *See* Defs.' SOF No. 24 (Docket No. 20, Att. 1) (citing Ex. P to Blaser Decl., ¶ 21 (Docket No. 20, Att. 2)).  Therein, Plaintiff (in this action, but the defendant in the state court action) also admitted that Hartford's amended complaint represented a subrogation claim; and that it was unaware of any debt or transaction between itself and Hartford. *See id*.

18.     On October 24, 2013, Defendants filed their Motion for Summary Judgment, effectively seeking the dismissal of this action. *See* Defs.' MSJ (Docket No. 19).  At its core,

Defendants' Motion argues that Plaintiff's reliance on the FDCPA is misplaced because (1) the state court action was never an attempt to collect a "debt" under the FDCPA but, rather, damages incurred by Hartford as a result of Plaintiff's negligence in relation to the plumbing work performed at the Triggs' residence in 2011 – in essence, that the state court action represents a subrogation case, not a debt collection case; (2) Defendants are not "debt collectors" under the FDCPA given that Plaintiff's obligation/liability to Hartford via the state court action has not yet been determined; and (3) Defendants' earlier reference to Plaintiff's obligation as a debt in the state court action's original complaint is inconsequential because Defendants cannot waive themselves *into* the FDCPA's application. *See* Mem. in Supp. of Defs.' MSJ., pp. 1-10 (Docket No. 20).[3]

19.    On November 14, 2013, Plaintiff filed his Motion to Compel, claiming that Defendants have raised improper objections and have provided incomplete responses to certain interrogatories. *See* Mot. to Compel (Docket No. 21).  According to Plaintiff, the information sought is relevant (1) "to establish[ ] that Defendant is a debt collector and that he abused the process," and (2) "to refute[ ] Defendant's bona fide error and mistake defense." *See id.* at pp. 4-8, 11-15.

20.    Also on November 14, 2013, Plaintiff filed a Rule 56(d) Motion, requesting that the Court defer consideration of Defendants' Motion for Summary Judgment until (1) ruling on Plaintiff's Motion to Compel, and (2) allowing time for Plaintiff to obtain the information sought therein. *See* 56(d) Mot. (Docket No. 22); *see also* Mem. in Supp. of 56(d) Mot., pp. 3-4 (Docket

---

[3]  Defendants also argue that (1) there is no genuine issue of material fact regarding Plaintiff's failure to provide proper notice claim (Count II), and (2) there is no genuine issue of material fact to support Plaintiff's abuse of process claim (Count III).  *See* Mem. in Supp. of Defs.' MSJ, pp. 10-13 (Docket No. 20).  However, the clear thrust of Defendants' arguments against liability relate to the (non)applicability of the FDCPA to begin with.

No. 22, Att. 2) ("Bartlett needs information regarding how many debt collection cases Blaser has filed because the volume of debt collection cases someone has filed on a regular basis is a critical factor courts consider in determining if someone is a debt collector"; "the interrogatories relate to whether Blaser's filing a debt collection lawsuit against Bartless was intentional or a mistake, and whether Blaser had procedures reasonably adapted to avoid any such error"; and "the interrogatories relate to Bartlett's abuse of process claim . . . . this evidence will substantiate Bartlett's claim that Blaser's filing of a complaint in the wrong county was no accident and that he has a repeated practice of filing all of his debt collection cases in Bingham County for his own convenience and to gain an advantage in litigation.").

21.     On November 18, 2013, Plaintiff responded to Defendants' Motion for Summary Judgment.  *See* Resp. to Defs.' MSJ (Docket No. 23).

22.     On December 5, 2013, Defendants submitted a reply in support of their Motion for Summary Judgment.  *See* Reply in Supp. of Defs.' MSJ (Docket No. 25).

23.     Also on December 5, 2013, Defendants sought to amend their Motion for Summary Judgment to argue that Plaintiff's abuse of process claim is a compulsory counterclaim in the underlying state court action that was never raised and is therefore barred.  *See* Defs.' Am. MSJ, p. 2 (Docket No. 26) ("Defendants submit that while this argument was not raised in their initial summary judgment brief, it is responsive to the arguments raised by the Plaintiff in his response.  Moreover, Defendants do not have any objection to the Court allowing the Plaintiff to provide a response to the argument . . . .").

24.     On December 9, 2013, Defendants responded to Plaintiff's Rule 56(d) Motion, arguing that "the information sought to respond to Defendants' Motion for Summary Judgment

**MEMORANDUM DECISION AND ORDER - 9**

is not relevant to the legal issues on which the MSJ is based" and "[b]ecause this information is neither relevant nor reasonably calculated to lead to admissible evidence, and its disclosure is unable to correct the defects in Plaintiff's complaint, it is both inappropriate for discovery and unnecessary to respond to the MSJ." *See* Resp. to 56(d) Mot., p. 1 (Docket No. 27).

25.    Also on December 9, 2013, Defendants responded to Plaintiff's Motion to Compel, arguing that the sought-after information is not relevant to the crucial issue in this case (whether a tort subrogation claim is a "debt" within the meaning of the FDCPA) and, also, that its compelled production would be unduly burdensome. *See* Resp. to Mot. to Compel (Docket No. 29).

26.    On December 16, 2013, the Court granted Plaintiff's Rule 56(d) Motion, finding in relevant part:

> It is apparent that the parties disagree on the actual relevance of those discovery requests to the arguments raised in Defendants' pending Motion for Summary Judgment. For this reason, Plaintiff's Motion to Compel should be resolved before turning to the merits of Defendants' Motion for Summary Judgment. While potentially capable of resolution on the parties' submissions to date, a telephonic hearing on Plaintiff's Motion to Compel will take place on **January 7, 2014 at 10:00 a.m.** to allow the parties to present their respective positions on the issue, while simultaneously addressing any of the undersigned's questions/concerns. The Court will likely rule from the bench and, if necessary, set additional deadlines moving forward and/or a hearing date on Defendants' Motion for Summary Judgment – until then, consideration of Defendants' Motion for Summary Judgment is on hold.

*See* 12/16/13 MDO, p. 7 (Docket No. 33) (Emphasis in original).[4]

27.    On December 26, 2013, Plaintiff submitted a reply in support of his Motion to Compel. *See* Reply in Supp. of Mot. to Compel (Docket No. 34).

---

[4] The Court also decided at the January 7, 2014 telephonic hearing that Defendants' Amended Motion for Summary Judgment would also be considered and resolved (at least insofar as adding the argument referenced therein to the balance of arguments raised in Defendant's original Motion for Summary Judgment). *See* 12/16/13 MDO, p. 7, n.4 (Docket No. 33).

28.     On December 30, 2013, Plaintiff responded to Defendants' Amended Motion for

Summary Judgment.  *See* Resp. to Defs.' Am. MSJ (Docket No. 35).

29.     On January 7, 2014, the Court held a hearing on Plaintiff's Motion to Compel; the

Court's Minute Entry Order read:

> Court shall allow [Defendants] to file a 5-page reply in support of Amended Motion
> for Summary Judgment . . . no later than 1/17/14.
>
> Court advised that discovery is stayed, pending resolution of Defendants' Motion for
> Summary Judgment and Amended Motion for Summary Judgment.  Nonetheless, the
> Court described its present view on the discovery issues raised within Plaintiff's
> Motion to Compel for the benefit of counsel in the event Defendants' dispositive
> motions do not prevail; if necessary, the Court will issue a separate order regarding
> Plaintiff's Motion to Compel following the order on Defendants' dispositive
> motions.

1/7/14 MEO (Docket No. 36).  The Court additionally noticed Defendants' Motion for Summary

Judgment and Amended Motion for Summary Judgment for hearing on January 30, 2014.  *See

id*.

30.     On January 10, 2014, Plaintiff filed his Motion for Summary Judgment, arguing

that "there is no genuine issue of material fact that (1) Blaser violated 15 U.S.C. § 1692i(a) of

the FDCPA by bringing an action against Bartlett in the improper venue of Bingham County;

and (2) Blaser committed an abuse of process by willfully filing a lawsuit against Bartlett in the

wrong county for an ulterior and improper purpose."  Pl.'s MSJ, pp. 1-2 (Docket No. 38).

31.     Also on January 10, 2014, Plaintiff his Motion to Amend to Seek Punitive

Damages relating to Defendants' alleged abuse of process "arising out of Defendants' . . . wilful

filing of a lawsuit against Bartlett in the wrong county for an ulterior and improper purpose."

Mem. in Supp. of Mot. to Am., p. 2 (Docket No. 39, Att. 1).

**MEMORANDUM DECISION AND ORDER - 11**

32.    On January 16, Defendants submitted a reply in support of their Amended Motion for Summary Judgment.  *See* Reply in Supp. of Defs.' Am. MSJ (Docket No. 40).

33.    On January 30, 2014, the Court held a hearing on Defendants' Motion for Summary Judgment and Amended Motion for Summary Judgment.  *See* 1/30/14 MEO (Docket No. 42).

34.    On February 3, 2014, Defendants responded to Plaintiff's Motion for Summary Judgment.  *See* Resp. to Pl.'s MSJ (Docket No. 43).

35.    Also on February 3, 2014, Defendants responded to Plaintiff's Motion to Amend to Seek Punitive Damages.  *See* Resp. to Mot. to Am. (Docket No. 44).

36.    On February 14, 2014, Plaintiff submitted a reply in support of his Motion to Amend to Seek Punitive Damages.  *See* Reply in Supp. of Mot. to Am. (Docket No. 45).

37.    Also on February 14, 2014, Plaintiff submitted a reply in support of his Motion for Summary Judgment.  *See* Reply in Supp. of Pl.'s MSJ (Docket No. 46).

38.    On March 7, 2014, Defendants objected to Plaintiff's replies in support of the latter's Motion to Amend to Seek Punitive Damages and Motion for Summary Judgment, arguing that "Plaintiff raises an argument and/or claim that Defendants have violated the [FDCPA] by suing the wrong party for a non-existent debt" and that "[t]his claim was not pleaded in the Complaint, is improperly raised for the first time in a reply brief, and is barred by the statute of limitations."  *See* Obj., pp. 1-2 (Docket No. 47).

39.    On March 10, 2014, Plaintiff opposed Defendants' objection to Plaintiff's replies in support of his Motion to Amend to Seek Punitive Damages and Motion for Summary

Judgment, arguing that (1) his reply briefing merely responded to Defendants' arguments opposing Plaintiff's Motion for Summary Judgment (relating to the applicability of a cited case), and (2) he did not rely on any new facts in responding to Defendants' "mistaken identity" argument. *See* Opp. to Obj. (Docket No. 48).

40.     Also on March 10, 2014, Plaintiff alternatively sought to amend his Motion for Summary Judgment to address the arguments raised within Defendants' objection to Plaintiff's replies in support of the latter's Motion to Amend to Seek Punitive Damages and Motion for Summary Judgment. *See* Pl.'s Am. MSJ, p. 2 (Docket No. 49) ("Plaintiff submits that while this argument was not raised in their initial summary judgment brief, it is responsive to the arguments raised by Defendants in their response. Moreover, Plaintiff does not have any objection to the Court allowing the Defendants to provide a response to the mistaken identity argument . . . ."); *compare with* Defs.' Am. MSJ, p. 2 (Docket No. 26) (offering identical argument/rationale for amendment).

41.     On March 27, 2014, Defendants submitted a reply in support of their objection to Plaintiff's replies in support of the latter's Motion to Amend to Seek Punitive Damages and Motion for Summary Judgment, attempting to re-focus attention upon the applicability of the FDCPA to Plaintiff's claims. *See* Reply in Supp. of Obj., p. 1 (Docket No. 50) ("[T]his case involves an obligation allegedly owed by a business. The [FDCPA] does not apply to business obligations and therefore not only does Plaintiff's claim fail, but this Court lacks subject matter jurisdiction over the entire case.").

//

//

**MEMORANDUM DECISION AND ORDER - 13**

## II.  DISCUSSION AND HOLDINGS

**A.      Standard of Law**[5]

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law.  *See* Fed. R. Civ. P. 56; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  It is "not a disfavored procedural shortcut," but is instead the "principal tool [ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources."  *Id.* at 327.  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Anderson*, 477 U.S. at 247-48.

The evidence, including all reasonable inferences which may be drawn therefrom, must be viewed in a light most favorable to the non-moving party and the Court must not make credibility findings.  *See id.* At 255.  Direct testimony of the non-movant must be believed, however implausible.  *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999).  On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence.  *See McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

---

[5]  Though several different motions are currently before the Court, the parties' underlying motions for summary judgment are the lynchpin of the pending disputes. Therefore, unless otherwise discussed elsewhere, the applicable standard of law for the purposes of this Memorandum Decision and Order relates to that of the summary judgments.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *See Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in his favor. *See id.* The non-moving party must go beyond the pleadings and show "by [his] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *See Celotex*, 477 U.S. at 324.

As a general rule, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (quoting *Forsberg v. Pac. Northwest Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988)). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003). An exception to this rule exists when cross-motions for summary judgment are filed. In that case, the Court must independently search the record for issues of fact. *See Fair Housing Council of Riverside Co., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).

**B.      The State Court Action Represents a Tort Subrogation Claim and is Not a "Debt" Under the FDCPA**

This case has twisted and turned along the road leading to this point, but it is now firmly "in park," awaiting decision upon a discrete issue that, in turn, will steer the resolution of the

**MEMORANDUM DECISION AND ORDER - 15**

pending motions before this Court. That is, does the state court action involve a debt implicating the protections of the FDCPA? If so, Plaintiffs' claims before this Court proceed for the time being; if not, they are dismissed as matter of law.

The FDCPA was enacted to protect consumers from abusive, deceptive, and unfair debt collection practices. *See* 15 U.S.C. § 1692. Aggrieved parties may seek to recover damages, attorneys' fees, and costs. *See id.* at § 1692k(a). However, the FDCPA does not apply to *all* collection procedures; instead, the FDCPA regulates the collection of a specific type of debt defined in the statute. *See Turner v. Cook*, 362 F.3d 1219, 1226-27 (9th Cir. 2004) ("Because not all obligations to pay are considered debts under the FDCPA, a threshold issue in a suit brought under the Act is whether or not the dispute involves a 'debt' within the meaning of the statute.").

The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes . . . ." 15 U.S.C. § 1692a(5). The FDCPA does not define "transaction," "but the consensus judicial interpretation is reflected in the Seventh Circuit's ruling that the statute is limited in its reach 'to those obligations to pay arising from consensual transactions, where parties negotiate or contract for consumer-related goods or services.'" *Turner*, 362 F.3d at 1227 (quoting *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.*, 111 F.3d 1322, 1326 (7th Cir. 1997)). Here, Plaintiff's potential obligation to pay damages resulting from the state court action does not arise out of a such a "consensual transaction" involving "consumer-related goods or services;" rather, it arises out of Plaintiff's alleged negligence.

**MEMORANDUM DECISION AND ORDER - 16**

For example, in *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367 (11th Cir. 1998), Hawthorne was involved in a car accident allegedly due to her own negligence. The other party to the accident incurred damages and obtained payment from its own insurer. That insurer then assigned its right of subrogation from Hawthorne to Mac Adjustment, Inc. ("Mac"), which then sought reimbursement from Hawthorne. Hawthorne then filed suit against Mac, alleging that its collection attempts directed at Hawthorne violated the FDCPA. The Eleventh Circuit ruled that the debt sought was not subject to the FDCPA, stating that "when we speak of 'transactions,' we refer to consensual or contractual arrangements, not damage obligations thrust upon one as a result of no more than her own negligence." *Id*. at 1371. Summarizing, the Eleventh Circuit said:

> While we do not hold that every consensual or business dealing constitutes a "transaction" triggering application of the FDCPA . . . at a minimum, a "transaction" under the FDCPA must involve some kind of business dealing or other consensual obligation. Because [the plaintiff's] alleged obligation to pay [the subrogated third party] for damages arising out of an accident does not arise out of any consensual or business dealing, plainly it does not constitute a "transaction" under the FDCPA.

*Id*.

In *Turner v. Cook*, 362 F.3d 1219 (9th Cir. 2004), the Ninth Circuit addressed for the first time the question of whether a tort judgment resulting from business-related conduct qualifies as a debt under the FDCPA. There, certain of the defendants had previously obtained a $1,000,000 tort judgment (on grounds of business interference) against one of the plaintiffs. Those defendants then hired an attorney and his law firm (who became the other defendants) to assist in collecting the judgment. All of them were eventually sued over the collection efforts, based upon alleged FDCPA violations. The district court ruled that the tort judgment was not a "debt" under the FDCPA, and dismissed the case. Affirming on appeal, the Ninth Circuit – fully

**MEMORANDUM DECISION AND ORDER - 17**

embracing the "well-reasoned Eleventh Circuit opinion" in *Hawthorne* – held that the plaintiff's judgment debt was the result of a tort (and not a consumer transaction), and therefore was not a "debt" within the meaning of the FDCPA. *See id.* at 1227-28.

The issues considered in *Hawthorne* and *Turner* are analogous here, particularly in deciding whether the state court collection action itself implicates the FDCPA's protections. Plaintiff might ultimately have to pay a subrogated claim for tort damages stemming from the state court action. However, the holdings of *Hawthorne* and *Turner* are an equal fit to these facts and – even if indirectly related to a contracted transaction for plumbing services between Plaintiff and the Triggs – the debt at issue is a separate obligation as determined under tort law, which might then be memorialized in an anticipated judgment should Hartford, the subrogated insurer, prevail. Said another way, such an obligation is not a function of any contract Plaintiff had with the Triggs, but, rather arises independently from Plaintiff's alleged negligence. But for Plaintiff's negligence in performing such services, there would be no duty upon Plaintiff to make any payment to the Triggs or any of their subrogees.[6]

Accordingly, in such a setting, tortious conduct (i.e., negligence) does not constitute a consensual or consumer transaction. To hold otherwise would mean that the Triggs (had they

---

[6] These details also highlight the fact that Plaintiff is not a typical consumer under the FDCPA. While the FDCPA uses the terms "consumer" and "any person" in different sections of the Act, Plaintiff claims to be a consumer for the purposes of bringing this case into the FDCPA's orbit. *See* Compl., ¶¶ 10 & 16 (Docket No. 1) (referenced 15 U.S.C. § 1692i(a) and 15 U.S.C. § 1692g(a) both apply to "consumers."). The FDCPA defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). Plaintiff provided plumbing services in exchange for payment – in doing so, he did not incur any debt for his personal, family, or household use (terms from the FDCPA's definition of "debt" (*see supra*)). Hence, any duty to make payment here is a function of Plaintiff's (alleged) negligence, not any actual transaction giving rise to a separate debt. *Cf.* Exs. N & P to Blaser Decl., ¶ 21 (Docket No. 20, Att. 2) (Plaintiff's answers to Defendants' state court complaints included tort defenses). Therefore, Plaintiff is not a consumer as that term is used in the FDCPA.

**MEMORANDUM DECISION AND ORDER - 18**

brought the state court action themselves, claiming Plaintiff's negligence resulted in damage to

their property, and assuming they were debt collectors under the Act) would be subject to the

FDCPA. Plaintiff offers no legal authority endorsing such a proposition and the undersigned

finds no persuasive reason to so hold here.[7] Therefore, the Court finds that this action does not

involve a "debt" as defined by the FDCPA and, as a result, Plaintiff's FDCPA-related claims

(Counts I and II) fail as a matter of law.[8]

## C. The Underlying State Court Complaint's Allegations (Since Amended) Do Not Give Rise to an FDCPA Claim

There is no dispute that Defendants' underlying state court action originally resembled a

debt collection proceeding. *See* Ex. I to Blaser Decl. ¶ 13 (Docket No. 20, Att. 2) ("That

Defendant [(in the state court action, but Plaintiff in this action)] owes Plaintiff [(in the state

court action, but Defendants here)] the sum of $10,344.69, together with interest at the rate of

12% and carrying charges as allowed by law from July 5th, 2012, for goods and/or monies loaned

to Defendant [(in the state court action, but Plaintiff in this action)] by Plaintiff [(in the state

---

[7] This conclusion is also supported by the Federal Trade Commission ("FTC") interpretation. The FTC is charged with enforcement and administration of the FDCPA. The FTC commentary makes clear that the term "debt" "does not include: . . . tort claims, because they are not debts incurred from a 'trans[action] (involving purchase of) property . . . or services . . . for personal, family, or household purposes.'" 53 Fed. Reg. 50,097-02 at 50,102 (1998); *see also Hawthorne*, 140 F.3d at 1372, n.2 (noting that "[a]lthough the FTC's construction of the FDCPA is not binding on the courts, because the FTC is entrusted with administering the FDCPA, its interpretation should be accorded considerable weight." (citing *Chevron, U.S.A, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844 (1984)).

[8] Plaintiff alternatively argues that the FDCPA covers *alleged* debts and that, because Defendants' state court action (notwithstanding its later amendment) sought to collect a debt, the FDCPA applies. *See* Resp. to Defs.' MSJ, p. 9 (Docket No. 23) ("Regardless of whether Blaser was mistaken about the facts or whether the debt was valid, Blaser must be held to the allegations of the [state court action]."). This argument is misplaced for the reasons discussed elsewhere in this Memorandum Decision and Order.

**MEMORANDUM DECISION AND ORDER - 19**

court action, but Defendants here)] . . . ."); *see also* Defs.' SOF No. 16 (Docket No. 20, Att. 1)

(acknowledging state court action "appears like a debt collection . . . .").

From this, Plaintiff argues that the FDCPA automatically applies, regardless of what

Defendants may have intended to allege or, even, what they should have alleged (legally

speaking). *See* Resp. to Defs.' MSJ, pp. 7-9 (Docket No. 23); Brief in Supp. of Pl.'s MSJ, pp.

12-15 (Docket No. 38, Att. 1). In other words, Plaintiff contends that the allegations of the state

court action necessarily trigger the FDCPA.

There is a loose logical sense to such an argument, but it is not ultimately persuasive

here. To begin, in support of his argument that the FDCPA applies to Defendants' conduct here

(as a function of the state court action's original allegations), Plaintiff cites to several cases

holding that the FDCPA speaks not only to actually-incurred debts, but also to debts *alleged* to

have occurred. *See, e.g.*, Resp. to Defs.' MSJ, p. 7 (Docket No. 23) ("However, Blaser's

argument is contrary to well established law that '[t]hroughout the FDCPA[,] coverage is based

upon actual or *merely alleged debt*.'") (quoting *Bridge v. Ocwen Federal Bank, FSB*, 681 F.3d

355, 361 (6th Cir. 2012) (Emphasis added by Plaintiff)); *id.* ("The Act affords standing to any

'aggrieved consumer to proceed under the Act so long as the *collector was engaged in an*

*attempt to collect an alleged debt.*'" (quoting *Fedotov v. Peter T. Roach and Associates, P.C.*,

354 F. Supp. 2d 471, 477 (S.D.N.Y. 2005) (Emphasis added by Plaintiff)); *id.* at p. 8 ("In

interpreting what constitutes a 'debt' under the Act, the Ninth Circuit has stated that 'a debtor

has standing to complain of violations of the Act, *regardless of whether a valid debt exists*.")

(quoting *Baker v. G.C. Services Corp.*, 677 F.2d 775, 777 (9th Cir. 1982) (Emphasis added by

Plaintiff)); *see also* Brief in Supp. of Pl.'s MSJ, p. 12 (Docket No. 38, Att. 1) (same). However,

such an argument does not altogether address the issue here.  These cases suggest only that

actions involving allegations of a debt already recognized as such under the FDCPA (whether

actually incurred by a defendant or not) are nonetheless covered by the FDCPA.  They say

nothing about the situation at issue here:  *i.e.*, whether a "debt" *not covered* by the FDCPA (as

this Court has already determined (*see supra*)) can still invoke the Act's protections, owing to

misplaced/mistaken allegations concerning that same debt/obligation in an underlying

proceeding.

    For example, Plaintiff especially relies on *Heathman v. Portfolio Recovery Associates,*

*LLC*, 2013 WL 755674 (S.D. Cal. 2013).  *See* Brief in Supp. of Pl.'s MSJ, pp. 12-15 (Docket No.

38, Att. 1).  There, the defendant, Portfolio Recovery Associates, LLC ("PRA"), filed an

underlying complaint seeking to recover a specified amount from the plaintiff, Janet Heathman

("Heathman").  PRA ultimately voluntarily dismissed the state court action, after the parties

agreed that Heathman had been sued by mistake and that no debt, credit, or any other

relationship ever existed between Heathman and PRA.  Heathman then brought an FDCPA

lawsuit against PRA, premised on the alleged obligation in PRA's state court complaint against

the admittedly wrong party.  The federal district court granted Heathman's motion for summary

judgment, reasoning in part:

> PRA concedes this alleged debt never existed, yet argues that because it should have
> sued [a third party], the nature of [the third party's] purported debt somehow controls
> this case.  But this case turns on the debt in fact alleged, not the debt that should have
> been alleged.  PRA's intent is entirely irrelevant to whether the alleged, but in fact
> nonexistent, Heathman debt qualifies as a "debt" under the FDCPA.  PRA's post-hoc
> characterization of which debt it meant to target is entirely beside the point. . . . .
> Regardless of why PRA erroneously sued or who PRA should have sued, this case
> solely concerns the debt in fact alleged in PRA's state court complaint – that is the
> nonexistent debt allegedly owed by Heathman to PRA.

*Heathman*, 2013 WL 755674 at *5 (internal citations omitted).  Plaintiff understandably relies

upon this same rationale to both oppose Defendants' Motion for Summary Judgment and support

**MEMORANDUM DECISION AND ORDER - 21**

his own Motion for Summary Judgment.  *See, e.g.*, Brief in Supp. of Pl.'s MSJ, pp. 13-15

(Docket No. 38, Att. 1) ("According to *Heathman*, [Plaintiff's] FDCPA claim can be

'exclusively premised' on the 'alleged obligation' in [Defendants'] complaint which stated that

[Plaintiff] was individually liable for a debt 'for goods and/or services or monies loaned,' even if

the debt, as alleged, is nonexistent.").

Similarities between this case and *Heathman* unquestionably exist, which Plaintiff

highlights.  However, neither those similarities nor the holding in *Heathman* directly addresses

the lynchpin issue involved in this dispute.  In *Heathman*, the alleged debt stemmed from a

consumer credit transaction (expressly covered under the FDCPA), a fact that stood alone from

whether Heathman actually owed that FDCPA-recognized debt (which she indisputably did not).

This was the point of the holding of *Heathman* – *i.e.*, that regardless of whether the covered debt

was actually owed, so long as a *covered* debt was alleged to be due and owing, the FDCPA is

available to protect the consumer/alleged debtor.  In short, the facts in *Heathman* presume a

covered debt.

That presumption, however, does not attach to this record.  As discussed above, *Turner*

states in no uncertain terms that "not all obligations to pay are considered debts under the

FDCPA."  *Turner*, 362 F.3d at 1226-27.  And, here, a dissection of Defendants' state court

action reveals that the alleged debt is not an FDCPA debt.  *See supra*.  A nuanced point to be

sure, but one that operates to distinguish *Heathman* (and similar cases in this respect), while still

taking into account *Turner's* Ninth Circuit precedent.

Even though *Heathman* in the abstract could be argued to possibly support Plaintiff's

position, the fact remains that the "debt" in question here is not one subject to the FDCPA.

Therefore, *Heathman* does not neatly apply and, absent legal authority allowing for the FDCPA's application to legally non-covered debts solely by reason of contrary allegations (Plaintiff offers none on this refined point), *Turner* compels this Court to decide as a threshold matter whether, in fact, the debt alleged is one recognized by the FDCPA. It is not. As a result, the underlying state court action's allegations do not give rise to an FDCPA claim here and, thus, Plaintiff's FDCPA-related claims (Counts I and II) fail as a matter of law.[9]

## D. This Court Will Not Exercise Supplemental Jurisdiction Over Plaintiff's Abuse of Process Claim

Under Idaho law, "[a]buse of process involves two elements: (1) a willful act in the use of legal process not proper in the regular course of the proceeding that was (2) committed for an ulterior, improper purpose." *Berkshire Investments, LLC v. Taylor*, 278 P.3d 943, 954 (Idaho 2012); *see also* Brief in Supp. of Pl.'s MSJ, p. 17 (Docket No. 38, Att. 1). In Count III of his Complaint, Plaintiff alleges that (1) "[Defendant] willfully filed a lawsuit against [Plaintiff] in the wrong county for an ulterior and improper purpose," (2) "[Defendant's] willful act of filing a lawsuit against [Plaintiff] in the wrong county constitutes using the process in an improper way," and (3) "[a]s a direct and proximate result, [Plaintiff] has suffered economic damages and

---

[9] In reaching this conclusion, the undersigned has considered the potential situation of an unscrupulous plaintiff/debt collector who, knowing the sought-after "debt" is not one recognized by the FDCPA, nonetheless purposely styles its complaint under the FDCPA so as to bully an unsuspecting defendant by seeking recovery of not only the alleged debt, *but also* the statutory pre-judgment interest and accompanying attorneys' fees that may be available as well – letting things run their course if nobody's the wiser and there are no objections, or amending their complaint only if called out and taken to task to unwind and erase the "mistake." This decision should not be read as condoning such a practice, if it were intentionally undertaken. But, regardless, an FDCPA claim is not automatically born as a consequence. There must be more to it, namely, a recognized debt under the Act. Other types of claims might very well be framed by the aggrieved debtor, but what such claims might be is not the subject of this Memorandum Decision and Order (*see infra*) – only that, under the facts at issue here, an FDCPA claim is not one of them.

MEMORANDUM DECISION AND ORDER - 23

emotional distress." Compl., ¶¶ 19-21 (Docket No. 1). To the extent Plaintiff's abuse of process claim is part and parcel with his FDCPA-related claims, it must fail, given the absence of such an anchoring claim (*see supra*). Recognizing this possibility, Plaintiff requests that this Court exercise supplemental jurisdiction over his abuse of process claim. *See* Reply in Supp. of Pl.'s MSJ, pp. 9-10 (Docket No. 46).

District courts may choose to retain or decline supplemental jurisdiction over state law claims after the federal claims have been dismissed. *See Satey v. JPMorgan Chase & Co.*, 521 F.3d 1087, 1091 (9th Cir. 2008). In exercising such discretion, the court considers whether retaining jurisdiction will best accommodate "the objectives of economy, convenience and fairness to the parties, and comity." *Trustees of Constr. Indus. & Laborers Health & Welfare Trust v. Desert Valley Landscape & Maintenance, Inc.*, 333 F.3d 923, 925 (9th Cir. 2003). The fact that the federal claims giving rise to federal jurisdiction no longer remain in a case, however, weighs in favor of declining supplemental jurisdiction:

> [I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – with point toward declining to exercise jurisdiction over the remaining state-law claims.

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties by procuring for them a sure-footed reading of the applicable law." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966).

As one would expect, the Ninth Circuit has repeatedly upheld decisions to decline supplemental jurisdiction over remaining state claims after summary judgment dismissal of

**MEMORANDUM DECISION AND ORDER - 24**

federal claims. *See, e.g.*, *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 911 (9th Cir. 2011) (upholding district court's decision to decline to exercise jurisdiction over state-law claims after granting defendants summary judgment on plaintiff's ADA accessibility claim). That is the appropriate course of action here as well. Discovery was stayed pending resolution of the parties' cross motions for summary judgment. Whatever discovery *has* taken place can be used in any state court proceeding. Additionally, to date, this Court has not evaluated the merits of Plaintiff's abuse of process claim – something Idaho state courts are in a better position to do anyway. Finally, a key reason this case has remains before this Court for as long as it has is that the Court has an extraordinarily full docket; the state courts may well be in a position to move to the merits of this case more quickly. Accordingly, the Court finds the balance favors not retaining Plaintiff's abuse of process claim, but rather to return the matter to state court for Plaintiff to pursue further if he so chooses.

## III. <u>ORDER</u>

For the foregoing reasons, IT IS HEREBY ORDERED that:

1.      Defendants' Motion for Summary Judgment (Docket No. 19) is GRANTED;

2.      Plaintiff's Motion to Compel (Docket No. 21) is DENIED as moot;

3.      Defendants' Amended Motion for Summary Judgment (Docket No. 26) is DENIED as moot;

4.      Plaintiff's Motion for Summary Judgment (Docket No. 38) is DENIED;

5.      Plaintiff's Motion to Amend to Seek Punitive Damages (Docket No. 39) is DENIED as moot; and

6.     Plaintiff's Amended Motion for Summary Judgment (Docket No. 49) is DENIED

as moot.



DATED:  **June 19, 2014**

_____
Honorable Ronald E. Bush
U. S. Magistrate Judge